UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA

        -v.-                                  ORDER

DAAMU DIGGS,                              16-CR-728 (CS)

                Defendant.
-------------------------------------------------------x

Seibel, J.

      Before the Court is Defendant Daamu Diggs's motion for reconsideration, (Docs. 32, 34, 35) of my order denying a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), known as "compassionate release," (Doc. 25); the Government's opposition thereto, (Doc. 36); and Defendant's reply, (Doc. 37).[1] Familiarity with my prior ruling, and with the standards governing motions under § 3582(c)(1)(A) – including the Second Circuit's recent decision in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), which I apply here – is presumed.

      Several things have changed since my last ruling. Defendant has served about four-and-a-half additional months. That does not change the calculus in my mind, as he has served – even if you calculate it by when he will be released to a halfway house rather than by when he will complete his sentence – barely more than 50% of his sentence.

      More importantly, COVID-19 has come to FCI Fort Dix in a big way,[2] and Defendant was one of many inmates in his housing unit to contract the virus. Fortunately, despite his risk

---

[1] Both sides have submitted medical records. They are directed to send to chambers for filing under seal unredacted hard copies of any exhibits that are not publicly filed.

[2] As of the filing of the instant motion on November 30, 2020, the Bureau of Prisons ("BOP") was reporting 246 positive inmates at FCI Fort Dix. As of today, it is reporting 103 inmate cases. The Department of Justice Office of Inspector General COVID-19 dashboard confirms that the outbreak among inmates (although not staff) at Fort Dix has peaked, and that the number of positive inmates has dropped significantly this month.

factors for severe disease, he did not suffer a severe case, and – like the others in his housing unit – he has recovered.  Although he expresses concern about lingering effects, he does not claim to be suffering any such effects.  He also expresses concern about the possibility of reinfection, in light of the impossibility of social distancing in prison, but cases of reinfection have been rare, and it appears that those who have had the disease have strong protection.  *See* https://www.nytimes.com/2020/11/17/health/coronavirus-immunity.html?searchResultPosition= 3.  It is indeed unfortunate the Defendant contracted COVID-19, but now that he has recovered, a sentence reduction based on the risk of contracting it no longer makes sense.

Of greater concern to the Court is that Defendant may not be getting appropriate care for his high blood pressure.  The Court recognizes that not every case of high blood pressure can be effectively treated with medicine, or at least not without a lot of tinkering, so the fact that Defendant's numbers remained high while various providers prescribed various combinations of pills does not alone suggest any failings in Defendant's health care.  The Court also acknowledges that Defendant has been seen regularly by medical personnel (although not apparently by a medical doctor since October 21).  But the Court shares defense counsel's concern that a change in medications was ordered on October 30 and not implemented until November 29.  While the medical staff may have been attentive, as the Government argues, they dropped an important ball:  Defendant's blood pressure reading on December 1, under the new regimen, was within normal range.  It would have been tragic had he suffered a serious event between October 30 and November 29.  It is not clear to me why the October 30 order was not implemented – especially because Defendant saw numerous providers in the interim.  It may be that the medical staff was overwhelmed by COVID cases in that period, but that would be an explanation rather than an excuse for what appears to be a major blunder.  Nor is it clear how

often Defendant's blood pressure is checked. The Government is directed to make appropriate inquiries and advise the Court, no later than December 16, 2020, as to how BOP intends to monitor Defendant's condition going forward.

In spite of my concerns, I continue to believe that the § 3553(a) factors militate strongly against release, for the reasons set forth in my previous decision.[3] Releasing defendant when he still has so much of his sentence to serve would, as explained previously, undermine numerous purposes of sentencing, including protecting the public from further crimes by Defendant which, sad to say, is a likelihood given his history. Accordingly, the motion is denied..

Dated: December 8, 2020
       White Plains, New York

*Cathy Seibel*
_____
CATHY SEIBEL, U.S.D.J.

---

[3] I agree with the Government that Defendant's explanation as to why he possessed a gun, and kept it in a room where children slept, is troubling and suggestive of the same poor judgment that has resulted in his total of ten criminal convictions (not counting violations of parole and supervised release).